## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA I. PAYNE,** | : | **Civil No. 1:22-CV-2063** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **C.O. STANBAUGH,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This is a prisoner civil rights case filed by the *pro se* plaintiff, Joshua Payne, a state inmate incarcerated in the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Camp Hill. In his amended complaint, Payne brings his federal claims pursuant to 42 U.S.C. § 1983, alleging that the defendant— a correctional officer at SCI Camp Hill—violated his First Amendment rights by confiscating Payne's legal materials that were in the possession of another inmate, action which Payne alleges was done in retaliation for Payne's prior litigation activity. He also asserts a state law negligence claim. (Doc. 25).

On this score, the facts alleged in Payne's amended complaint reflect in a more fulsome manner those asserted in his original complaint: that on or about October

26, 2022, the defendant, Officer Stanbaugh, approached him and informed him that he had confiscated legal materials belonging to Payne that were in the possession of another inmate named Smith. (Id., ¶ 6). Payne alleges that Stanbaugh confiscated these legal materials stating that they were lawsuits filed against his fellow corrections officers and he did not want Payne showing other inmates how to file lawsuits against the DOC. (Id., ¶ 7). Thus, liberally construed, Payne alleges that Stanbaugh indicated that he had confiscated, in part, in retaliation for Payne's past litigation. According to Payne, Stanbaugh rebuffed his request for a confiscation slip, stating that he would instead be discarding the paperwork since he could not allow that type of material to be passed around from inmate to inmate and that he had "some nerve to try and show inmates how to file lawsuits against DOC staff like my brothers Timpe and Ritchey." (Id., ℙ 8-10). The complaint avers that the legal materials Stanbaugh confiscated comprised of 75 pages of material relating to several ongoing civil and criminal cases in which Payne was a party. (Id., ℙℙ 16-17). Payne alleges that Stanbaugh destroyed his paperwork without first following the appropriate DOC procedures. (Id., ℙ 23). According to Payne, he filed a grievance through the DOC's grievance process complaining of the incident and that it was denied on all levels. (Id., ¶ 14).

Thus, Payne filed the instant action against Stanbaugh, initially alleging claims of First Amendment retaliation, violation of his right of access to the courts,

and a claim under the Equal Protection clause of the Fourteenth Amendment. (Doc.
1, ¶¶ 18-19, 21). The defendant subsequently filed a motion to dismiss the complaint,
(Doc. 13), which was granted on April 9, 2024, without prejudice to the plaintiff
filing an amended complaint. (Doc. 24). Payne filed an amended complaint on April
9, 2024, abandoning his Equal Protection and violation of right of access to the
courts claims, but reasserting his claim of First Amendment retaliation and adding a
state law negligence claim. The defendant filed a motion to dismiss the amended
complaint on April 30, 2024, alleging that the plaintiff lacks standing to complain
about the destruction of his papers, that he failed to exhaust his administrative
remedies, that his retaliation claim is without merit, and that the defendant is entitled
to sovereign immunity as to the plaintiff's claim of negligence. The motion is fully
briefed and ripe for disposition. (Docs. 27, 32). For the reasons discussed below, we
recommend the defendant's motion be denied.

## II.  <u>Discussion</u>

### A. <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for
the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal
Rules of Civil Procedure only if the complaint fails to state a claim upon which relief
can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for
the legal sufficiency of a complaint, the United States Court of Appeals for the Third

Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than

4

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." Id. A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

7

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B. The Defendant's Motion Should be Denied.**

Payne's amended complaint renews his claims under 42 U.S.C. § 1983 for violation of his rights under the First Amendment and, for the first time, also alleges a claim of negligence relating to the destruction of this property. In considering his original complaint, we recommended Payne's retaliation claim be dismissed because he was unable to overcome the defendant's showing that the confiscation of his legal materials would have occurred regardless of the alleged protected activity, Payne's pending lawsuits, because the paperwork was considered contraband, which was confiscated in accordance with DOC policy. However, Payne's amended complaint highlights that Stanbaugh's alleged destruction of this paperwork was done in contravention of DOC policy, well-pleaded facts which could support the view that his actions were, in fact, retaliatory and did not serve a legitimate penological interest. Furthermore, he has adequately pleaded a claim of negligent care of personal property, a state law tort claim for which Pennsylvania has waived sovereign immunity. Thus, as explained below, at this juncture where our consideration of this case is cabined and confined by the well-pleaded facts in this amended complaint, we conclude that Payne has adequately stated a claim against

the defendant for violations of his constitutional rights and negligence. Accordingly, we will recommend that the motion to dismiss be denied.

### 1.  The Plaintiff Has Stated a First Amendment Retaliation Claim.

Payne again asserts a civil rights claim pursuant to § 1983, alleging that the defendant violated the First Amendment when Stanbaugh retaliated against him. Payne avers that he was retaliated against by Stanbaugh when Stanbaugh confiscated Payne's legal materials from inmate Smith and destroyed it before the exhaustion of the grievance process, which Payne asserts violated DOC policy and was retaliatory for the lawsuits he had filed against other correctional staff.

In order to state a claim of retaliation under the First Amendment, a plaintiff must show: "(1) that [he] engaged in a protected activity, (2) that defendant[']s retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)). Stated differently, the plaintiff must demonstrate that the protected speech was "a 'substantial factor' in the alleged retaliatory action." McAndrew v. Bucks County Bd. Of Comm'rs, 183 F.Supp.3d 713, 731 (E.D. Pa. 2016) (citing Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)). If a plaintiff

makes such a showing, the burden then shifts to the defendant to show that, even if the protected speech had not taken place, it would have taken the same action. Id.

With respect to the third element, there are three ways in which a plaintiff can establish causation for a First Amendment retaliation claim, showing: "(1) an 'unusually suggestive temporal proximity' between the speech and the alleged retaliatory conduct; (2) a 'pattern of antagonism coupled with timing'; or (3) that the 'record as a whole' permits the trier of fact to infer causation." McAndrew, 183 F.Supp.3d at 737 (quoting DeFlaminis, 480 F.3d at 267). Additionally, an unusually suggestive temporal proximity, by itself, can be enough to infer causation. LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). However,

> While " 'suggestive temporal proximity' is relevant to establishing a causal link between protected conduct and retaliatory action ... in First Amendment retaliation cases," Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 494 (3d Cir. 2002) (citations omitted) (emphasis added), it is not dispositive of the issue. See DeFlaminis, 480 F.3d at 267. Rather, a plaintiff may also establish the requisite causal connection by showing "a pattern of antagonism coupled with timing to establish a causal link." Id. (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920–21 (3d Cir. 1997)). The plaintiff may establish that causal link by offering evidence which "gleaned from the record as a whole" could lead a reasonable fact-finder to infer causation. Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). Finally, Plaintiff is not required to show "but for causation;" rather, she is required to show that the "exercise of free speech rights played 'some substantial role' in the

employer's decision." <u>Marrero v. Camden Cty. Bd. of Social Services</u>,
164 F.Supp.2d 455, 469 (D.N.J. 2001) (citing <u>Suppan</u>, 203 F.3d at 236).

<u>Malone v. Economy Borough Municipal Authority</u>, 669 F.Supp.2d 582, 603 (W.D.
Pa. 2009).

We previously concluded, and the defendant does not contest, that a *prima
facie* case of retaliation could be made here, where the defendant does not dispute
that Payne's lawsuits constitute protected activity for purposes of the First
Amendment, and courts have recognized that "a delay in providing access to legal
materials may constitute adverse action sufficient to support a First Amendment
retaliation claim." <u>Wyatt v. Malisko</u>, 2020 WL 3001936, at * n.7 (M.D. Pa. Mar. 19,
2020), <u>report and recommendation adopted</u> 2020 WL 2992088 (M.D. Pa. June 4,
2020) (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 578–79 & n.1 (1998); <u>Hart v.
Goulette</u>, Civil No. 16-cv-028-PB, 2016 WL 4575581, at *5 (D.N.H. July 22,
2016)). Moreover, as we previously explained, at this stage, Payne has alleged facts
that may support a finding of unusually suggestive timing. Indeed, one of the
lawsuits Payne cites in his complaint was filed in September of 2022, and the alleged
retaliatory action occurred roughly one month later in October of 2022.

But we previously concluded that Payne's complaint failed to overcome the
defendant's showing that the action would have been taken regardless of Payne's
protected activity, specifically that Stanbaugh confiscated his paperwork in
accordance with DOC protocols because it was considered contraband under DOC

policy. The defendant asserts that the legal materials were considered contraband under DOC policy, as inmates are not permitted to have possessions belonging to other inmates. Indeed, DC-ADM 815 defines "contraband" as, *inter alia*, "property belonging to another inmate." <u>See</u> DC-ADM 815, § 3C(1)(o) (effective Sept. 13, 2022).[1] Payne's amended complaint concedes that the paperwork was confiscated from a fellow inmate.[2] Accordingly, in rebutting the *prima facie* case of retaliation, the defendant asserts that, regardless of the plaintiff's pending lawsuits or the

---

[1] https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last accessed July 18, 2022). We note that we may take judicial notice of information publicly available on government websites. <u>Small v. Kauffman</u>, 2022 WL 3036050, at *4 (M.D. Pa. Aug. 1, 2022) (citing <u>Vanderklok v. U.S.</u>, 868 F.3d 189, 205 (3d Cir. 2017)).

[2] The defendant also argues that the fact that Payne alleges his legal paperwork was confiscated from another inmate deprives this court of jurisdiction, since Payne does not have standing to bring his constitutional claim. The concept of standing, while potentially relevant to a Fourth Amendment illegal search and seizure claim, which requires the infringement of one's own personal rights by the search and seizure, <u>see</u> <u>Simmons v. United States</u>, 390 U.S. 377, 389 (1968), has no application to this First Amendment retaliation claim, where the plaintiff alleges he personally engaged in the protected activity of filing lawsuits against the DOC and was the direct victim of Stanbaugh's retaliation for engaging in this protected activity. Indeed, the defendant provides no legal support for his argument that standing for this First Amendment claim would require him to have had actual possession of his legal documents at the time they were confiscated. Indeed, as the Third Circuit has explained, with regard to the policy behind political retaliation claims, the rights implicated in First Amendment retaliation claims are much less personal because such retaliation against one individual could deter others from engaging in protected conduct. <u>Montone v. City of Jersey City</u>, 709 F.3d 181, 199 (3d Cir. 2013). Thus, the concerns implicated by these claims "are the same whether a plaintiff is the 'direct' or 'indirect victim of illegal . . . retaliation." <u>Id.</u>

substance of those lawsuits, his property would have been confiscated from inmate Smith as contraband in accordance with the DOC's policy. See Burgos v. Canino, 641 F.Supp.2d 443, 456 (E.D. Pa. 2009) (finding no retaliatory causation where the defendant's actions were taken in accordance with prison policy). The defendant argues that this policy and the well-pleaded facts averred by Payne, who admits providing these documents to a third party in violation of prison rules, conclusively support the defendant's contention that the same action would have been taken regardless of Payne's protected activity. See Starnes v. Butler County Court of Common Pleas, 50th Judicial District, 971 F.3d 416, 430 (3d Cir. 2020) (noting that a defendant has the opportunity to rebut a *prima facie* case of retaliation by showing it would have taken the same action regardless of any retaliatory motive).

However, in his amended complaint, Payne clarifies that it was not the taking of the contraband that violated policy, but the destruction of his paperwork without following the proper procedures. Moreover, Payne specifically alleges that the destruction of the property by Stanbaugh violated DOC policies, and Stanbaugh's refusal to document the taking of the property concealed this policy violation. Indeed, the Third Circuit has acknowledged this distinction, explaining in a similar case:

> Defendants argue that because the legal documents were "contraband," the documents were taken for a legitimate penological reason. We can understand that in the case of the documents seized from inmate Lyons, the prison might choose to categorize the documents as "contraband"

13

> in the hands of Lyons, but it does not necessarily follow that the
> documents should be destroyed, rather than returned to their owner.
> Indeed, when Jacobs filed a grievance concerning those documents, a
> staff member responded that he would "review the matter with Lt.
> Giddens, and, if appropriate, the items will be returned to you." A jury
> could infer that only after Giddens determined that the papers included
> a planned lawsuit against him did he decide that the papers should be
> destroyed as "contraband."

Jacobs v. Beard, 172 F. App'x 452, 455 (3d Cir. 2006). Here, the defendant

acknowledges DOC policy referred to by the plaintiff which requires exhaustion of

the appeals process before seized contraband can be destroyed, See DC-ADM 815,

§ 3C (effective March 16, 2021),[3] but argues that this policy was not triggered in

Payne's case because he did not specifically notify the Facility Manager in his

original grievance to retain the property through the grievance process. (Doc. 27, at

10) (citing DCM-ADM 804 Section 1.A.22). At this juncture where we are enjoined

to consider the facts as alleged by Payne, in our view, the plaintiff has articulated

facts which undermine the plaintiff's same result defense because he alleges that

---

[3] Per this DOC policy:

> The facility security office, after consultation with the Major, will
> determine when contraband will be destroyed. Destruction of
> contraband will ONLY occur after the inmate's misconduct hearing is
> held and the misconduct appeal process is exhausted. When an inmate
> files a grievance regarding confiscated contraband, destruction of the
> property will only occur after the appeal process has been exhausted.

https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/815-personal-property-state-issued-items-etc.pdf    (last
accessed January 3, 2025).

Stanbaugh was not simply following DOC policy but was, in fact, bypassing DOC policy by discarding of his personal property without following the proper procedures. And, to the extent that the defendant argues this policy should not apply in the plaintiff's case, since he did not request that the Facility Manager retain his legal paperwork throughout the grievance process, a conclusion on this issue would require us to go far beyond the pleadings, considering the vastly contrasting factual narratives presented by the parties. Indeed, Payne's complaint and accompanying grievance tend to indicate that his paperwork was immediately discarded by Stanbaugh. Further, determining whether this policy applied in Payne's case would require us to determine how these requests to retain personal property were to be made and in what timeframe, issues that simply cannot be resolved by the court on the pleadings at the motion to dismiss stage.

These same ambiguities in the grievance process also create questions with regard to exhaustion that cannot be resolved as a matter of at this stage based solely upon the pleadings. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under ... [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is

mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013). In accordance with the PLRA, in order to prevail on this affirmative defense a defendant must show that the prisoner failed to comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

16

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination eventually requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). Moreover, when assessing an exhaustion claim, it is important to note that the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Nyhuis v. Reno, 204 F.3d 65, 90 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden Cnty., 728 F.3d 265,

17

273 (3d Cir. 2013). As the Supreme Court has observed: "the PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632 642 (2016). We are also enjoined by the Supreme Court to take a pragmatic approach to the issue of PLRA exhaustion and consider exhaustion claims in light of "the real-world workings of prison grievance systems." Id. at 643. Adopting this pragmatic view, and examining exhaustion claims through a real-world lens, The Supreme Court has acknowledged that administrative remedies are effectively unavailable "when prison administrators thwart inmates from taking advantage of [the grievance process] through machination, misrepresentation, or intimidation." Id. at 633.

Judged against these benchmarks, we find that there are issues of fact with regard to whether Payne sufficiently exhausted his administrative remedies which simply cannot be resolved at this stage. Indeed, this issue of exhaustion is inextricably bound to the merits of this case, where it appears that Payne appealed his claim at all levels of review, but the plaintiff describes the grievance process being frustrated because the administration denied the confiscation ever took place at every level and cited insufficient evidence, evidence that the plaintiff alleges Defendant Stanbaugh suppressed and he was never provided.

The defendant argues that Payne failed to exhaust his administrative remedies, as required by the PLRA because, although he appealed at all levels of review, he procedurally defaulted by failing to follow the specific grievance procedures by describing with particularity the grounds for his grievance appeal. The alleged incident occurred on October 26, 2022. On November 1, 2022, Payne filed grievance #1004766,[4] alleging that Stanbaugh confiscated his legal work from another inmate and that he had informed him he threw it away "because most of it was against DOC officials lawsuits . . . and we can't have you show people how to do that . . ." (Doc. 26-2). His initial grievance was denied because he failed to provide a copy of the alleged confiscation slip, (id.), which the plaintiff stated in his amended complaint Stanbaugh refused to give to him. (Doc. 25, ¶¶ 8-10). Payne then appealed his grievance to the facility manager, who determined there was no evidence to support his confiscation claim, once again seemingly relying upon the fact that Payne could not produce a confiscation slip. (Doc. 26-2). Thus, at the institutional level, Payne's grievances were denied because of what the plaintiff asserts was one aspect of Stanbaugh's misconduct—his refusal to document the confiscation. Stymied in this

---

[4] A court may consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).

fashion, Payne then appealed to the Secretary's Office of Inmate Grievances and Appeals (SOIGA), stating "I am raising all issues and seeking all relief sought in my initial grievance." (Id.) But SOIGA determined that he failed to follow submission procedures because an appeal to final review must contain a clearer statement of the reason(s) for appealing the Facility Manager's decision. (Id.)

Applying the Supreme Court's pragmatic approach to this issue of PLRA exhaustion and considering exhaustion claims in light of "the real-world workings of prison grievance systems" and accepting all facts alleged by Payne as true, the refusal of Stanbaugh to issue any record of the confiscation essentially frustrated Payne's attempts to effectively utilize the grievance system since at every level it was found there was insufficient evidence to prove his claim. Moreover, given the fact that the institution apparently denies the confiscation ever took place, and the plaintiff alleges Stanbaugh never issued a confiscation slip for retaliatory reasons, (Doc. 25, ⁋ 9), it is difficult to see what additional information could have been provide by Payne to satisfy the prescribed submission procedures that SOIGA claimed he failed to follow in his final appeal. Accordingly, dismissing this case on the issue of exhaustion would be improper, since Payne has alleged he properly exhausted his remedies, but was frustrated in his efforts to document this claim by C.O. Stanbaugh's violation of institutional rules, which is all that is required at this stage. Small, 728 F.3d at 268-69.

In sum, the pleadings demonstrate that there are two conflicting narratives in this case which require a more fulsome development of the record. But, in our view, Payne's more artful pleading of First Amendment retaliation against Stanbaugh in this amended complaint at least clears the bar of this motion to dismiss where he alleges Stanbaugh violated DOC policy in disposing of his legal paperwork without the prescribed process.

### 2. The Defendant is Not Entitled to Sovereign Immunity from The Plaintiff's Negligence Claim.

We also recommend that Payne's newly minted state law negligence claim proceed. The defendant argues that the plaintiff's negligence claim must be dismissed because he is entitled to sovereign immunity. However, as the defendant acknowledges, Pennsylvania has specifically waived sovereign immunity in cases of negligent destruction of personal property, which is precisely what the plaintiff has alleged in this case.

On this score, the defendant's sovereign immunity argument stems from the familiar proposition that the Commonwealth and its employees and officials enjoy broad immunity from most state law claims, immunity that is expressly embraced by statute, which provides that:

> It is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

21

1 Pa.C.S.A. § 2310; see also Moore v. Commonwealth, 114 Pa.Cmwlth. 56, 538 A.2d 111, 115 (Pa.Commw.1988) ("In other words, if the Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune"). This grant of immunity:

> Applies to Commonwealth employees in both their official and individual capacities, so long as the employees are acting within the scope of their duties. Conduct of an employee is within the scope of employment if "it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits.

Brautigam v. Fraley, No. 09–1723, 2010 WL 480856, *4 (M.D. Pa. Feb.4, 2010) (cleaned up).

But this wide sweeping immunity is subject to certain statutory exemptions that have been specifically articulated by the Pennsylvania legislature, including that Commonwealth parties remain liable for any harm caused by "care, custody, or control of personal property." 42 Pa.C.S.A. 8522(b)(3). Section 8522, of Title 42, Pennsylvania Consolidated Statutes provides a limited waiver of sovereign immunity in certain specific instances, stating that:

> **(a) Liability imposed.**—The General Assembly, ..., does hereby waive, in the instances set forth in subsection (b) ..., sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

22

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

---

**(3) Care, custody or control of personal property.**—The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa.C.S.A. § 8522(a) and (b)(3). "Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." Lockwood v. City of Pittsburgh, 561 Pa. 515, 751 A.2d 1136, 1139 (Pa.2000) (citation omitted).

With this guiding principle in mind, we turn to the application of 42 Pa.C.S.A. § 8522(a) and (b)(3) to torts that occur in a prison setting. The Pennsylvania courts have examined the application of § 8522(b)(3)'s "personal property" exception to sovereign immunity in the context of prison tort claims on several occasions in different factual settings. As construed by the Pennsylvania courts, this narrow exception to sovereign immunity applies to damages claims made by inmates for negligent damage to items of inmate personal property while that property is in the possession of Commonwealth parties. Williams v. Stickman, 917 A.2d 915 (Pa.Cmwlth. 2007). Such claims are permitted against the Commonwealth pursuant

to § 8522(b) (3). In contrast, courts have rejected efforts by inmates to broadly claim that this exception to sovereign immunity applies to all prisoner personal injury claims, based upon the notion that the inmates themselves are in some fashion "in the possession and custody of Commonwealth parties." Gallagher v. Commonwealth, 118 Pa.Cmwlth. 516, 545 A.2d 981 (Pa.Cmwlth.1988).

For his part, the defendant contends he was a Commonwealth employee, who was acting within the scope of his employment in committing the acts alleged in this complaint. He also insists that none of the narrowly crafted statutory exceptions to sovereign immunity apply here because, although Payne has expressly pleaded a claim of negligent care, custody, or control of his personal property, the factual allegations in his complaint amount to an intentional tort and would not be statutorily exempt from a grant of sovereign immunity. However, as previously discussed, at this stage the ultimate fate of Payne's legal paperwork is still somewhat of a mystery and the parties assert two contrasting narratives regarding exactly if, when, and how Payne's paperwork was confiscated and destroyed. Moreover, while Payne has alleged that Stanbaugh confiscated and disposed of his personal property in an intentional and retaliatory manner in stating his First Amendment claim, he is also entitled to, and indeed has, pled negligent treatment of this property in the alternative. Moreover, the factual allegations in Payne's amended complaint that Stanbaugh breached his duty of handling his property in compliance with DOC

24

policy describes sufficiently careless conduct to meet the pleading standard of negligence and therefore survives a motion to dismiss. Since the defendant has not argued that Payne has failed to state a negligence claim, and we reject the defendant's argument that he cannot plead both an intentional constitutional violation and a negligence in the alternative, we recommend the court deny the defendant's motion to dismiss this claim.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendant's motion to dismiss (Doc. 26), be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of January 2025.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge